**Appeal No. 15-1110**
(Reexamination No. 95/000,611)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

**BENECKE-KALIKO AG**,
                            Appellant,

v.

**HAARTZ CORPORATION, THE**,
                            Appellee.

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board.

## REPLY BRIEF FOR APPELLANT

Fay Sharpe LLP

Mark D. Klinko
Jude A. Fry
1228 Euclid Avenue
Fifth Floor
Cleveland, Ohio 44115
Telephone: (216) 363-9125
*Attorneys for Appellant*                         March 2, 2015

# CERTIFICATE OF INTEREST

Counsel for the Appellant certifies the following:

1. The full name of every party or amicus represented by me is:

**Benecke-Kaliko AG**

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

**None**

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

**ContiTech AG, Continental AG, Göppinger Kaliko GmbH, and Continental-Kautschuk-Export GmbH**

4. The names of all law firms and partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

**Jude A. Fry and Mark D. Klinko**

**Fay Sharpe LLP**

| | |
|---|---|
| March 2, 2015 | /s/ Mark D. Klinko |
| Date | Mark D. Klinko |

# **TABLE OF CONTENTS**

Table of Contents .................................................................................................. i

Table of Authorities ............................................................................................. ii

I. Introduction .................................................................................................1

II. The USPTO Erred by Granting the Request for Reexamination ....................2

III. Haartz's Claim that Benecke Attempted to Mislead the Court is Incorrect....4

IV. The Appealed Claims Would Not Have Been Obvious ................................5

    A.    Haartz's Claim That This Appeal is Directed Only to Claim 1 is Incorrect ...............................................................................5

    B.    Haartz's Claim Regarding Benecke's Statement During an Oral Hearing Before the Board is Incorrect ....................................5

    C.    Haartz's Statements Concerning the Board's Findings of Fact are Misleading ................................................................................6

    D.    Neither Haartz nor the Board has Provided a Coherent Rationale for Applying the Alleged Gel Content Teachings of Kopytko and/or McKay to the Process of Scholz ............................................................................................................7

    E.    McKay Teaches Away from the Use of EPM and EPDM..................10

    F.    The Evidence of Secondary Considerations was Not Properly Considered ........................................................................11

V. Conclusion ................................................................................................13

# **TABLE OF AUTHORITIES**

<u>CASES</u>
*Bowen v, Michigan Academy of Family Physicians,*
    476 U.S. 667 (1986)................................................................................ 2-3
*In re Kahn,*
    441 F.3d 977 (Fed. Cir. 2006) ......................................................................9
*In re Young,*
    927F.2d 588 (Fed. Cir. 1991) ....................................................................11
*Innogenetics, N.V. v. Abbott Labs.,*
    512 F.3d 1363 (Fed. Cir. 2008) ...................................................................9
*Innovention Toys, LLC v. MGA Entertainment, Inc.,*
    637 F.3d 1314 (Fed. Cir. 2011) ...................................................................8
*KSR Int'l Co. v. Teleflex, Inc.,*
    550 U.S. 398 (2007)....................................................................................9
*McGinley v. Franklin Sports, Inc.,*
    262 F.3d 1339 (Fed. Cir. 2001) ...................................................................9
*Medichem S.A. v. Robalo S.L.,*
    437 F.3d 1157 (Fed. Cir. 2006) .................................................................11
*Winner Int'l Royalty Corp. v. Wang,*
    202 F.3d 1340 (Fed. Cir. 2000) ............................................................ 10-11
*Wyers v. Master Lock Co.,*
    616 F.3d 1231 (Fed. Cir. 2010) ...................................................................8
<u>STATUTES</u>
35 U.S.C. § 103 .................................................................................................3
35 U.S.C. § 312 .................................................................................................2
5 U.S.C. § 706(2)(D)..........................................................................................2

I.   **<u>INTRODUCTION</u>**

Appellant, Benecke-Kaliko AG ("Benecke") is the owner of U.S. Patent No. 6,663,738 ("the '738 patent"). The methods claimed in the '738 patent are used to produce Benecke's commercially successful TEPEO®2 foils. These foils are useful for instrument panels and door trim applications for automobiles. Appellee, the Haartz Corporation ("Haartz") sought *inter partes* reexamination of the '738 patent on the basis of the Sitaram Declaration. The USPTO erroneously granted Haartz's Request for Reexamination based on the Sitaram Declaration. If the USPTO had properly followed its own procedures, the Request for Reexamination would have been denied because no substantial new question of patentability would have been found.

Haartz's Brief contains errors concerning Benecke's statements and the claims involved in this appeal. In particular, Haartz erroneously contends that (1) Benecke attempted to mislead the Court into believing that all of the obviousness rejections relied upon the Sitaram Declaration; (2) this appeal is only directed to claim 1; and (3) Benecke's statement regarding a single obviousness rejection at an oral hearing before the Board was made with respect to all of the obviousness rejections. Haartz also mischaracterized several findings of fact by the Board.

Haartz discussed at length its position that McKay is analogous art, while failing to provide any rationale explaining why a person having ordinary skill in the art would have applied McKay's gel content teachings to Scholz. Instead, Haartz follows the Board's faulty analysis by making conclusory statements regarding combining references without explaining why an ordinarily skilled artisan, without

1

the benefit of impermissible hindsight, would have combined the references. Additionally, Haartz fails to properly recognize that McKay teaches away from the use of EPDM which is required by Kopytko. Thus, a person having ordinary skill in the art would not have combined the teachings of McKay and Kopytko.

Finally, Benecke's objective evidence establishes the commercial success of the TEPEO®2 foils. This commercial success can be attributed to the gel content limitation required by the present claims, not the conventional lacquering step as suggested by the Board and Haartz. Benecke did not waive any of these arguments concerning commercial success.

## II.     THE USPTO ERRED BY GRANTING THE REQUEST FOR REEXAMINATION

The USPTO's procedure was unfair as set out in detail on P. 11-14 of Benecke's Brief. Benecke argued that the USPTO erred by granting the Request for Reexamination in those remarks. In response, Haartz asserted that the

> challenge to the USPTO's initial decision to grant reexamination, which was based on a finding that there was a substantial new question of patentability, is non-appealable. 35 U.S.C. § 312.

Haartz Brief at p. 16. However, administrative law requires that this Court exercise jurisdiction to review compliance by federal agencies (e.g., the USPTO) with the regulations and guidance of the agencies and to reverse agency actions issued "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). "Only

2

in the rare – some say non-existent case … may review for 'abuse' be precluded." *Bowen v, Michigan Academy of Family Physicians,* 476 U.S. 667, 672 n.3 (1986).

In the matter presently before this Court, the USPTO erred by granting the Request for Reexamination in the absence of evidence of a substantial new question of patentability. The USPTO granted Haartz's Request for Reexamination in a Petition Decision mailed March 30, 2011. In the Petition Decision, each of the purported substantial new questions of patentability relied on the Sitaram Declaration. A157-A159. Years after granting Haartz's Request for Reexamination, the USPTO finally admitted the deficiencies in the Sitaram Declaration. A8 and A34. If the USPTO had properly evaluated the Sitaram Declaration at the outset, the Request for Reexamination would not have been granted because there was no substantial new question of patentability.

Haartz now contends that the Request for Reexamination proposed

> a rejection of claims 1-2 and 6-11 under 35 U.S.C. § 103 in view of Scholz in combination with U.S. Patent No. 5,869,591 (McKay) and further in view of the Deanin text "*Polymer Structure, Properties And Applications.*"

Haartz Brief at p. 4. However, the record establishes that this proposed rejection further relied upon the Sitaram Declaration. In particular, the claim chart for this proposed rejection explicitly refers to "Exhibit 1". A147 at right column. Exhibit 1 to Haartz's Request for Reexamination was the Sitaram Declaration. A140 at first paragraph. Benecke submits that the USPTO clearly failed to observe its own procedures by granting the Request for Reexamination when no substantial new question of patentability existed.

3

Haartz also contends that Benecke waived the argument regarding the USPTO's erroneous decision to grant the Request for Reexamination because the argument was not presented to the Board. Haartz Brief at p. 20. However, the Board only officially reversed Ground A, which was based on the Sitaram Declaration, and announced that Grounds D through F did not actually rely upon the Sitaram Declaration in its Decision on Rehearing. A29 at first full paragraph; and A34 at second full paragraph. Accordingly, the present argument only became available after proceedings before the USPTO terminated and could not have been raised prior to the present appeal.

### III.   HAARTZ'S CLAIM THAT BENECKE ATTEMPTED TO MISLEAD THE COURT IS INCORRECT

Haartz asserts that Benecke attempted to deceive this Court by implying that all of the obviousness rejections were critically dependent upon the Sitaram Declaration. Haartz Brief at p. 15 and 19. Haartz's assertion is completely false. Benecke listed the all of the Board's Grounds of rejection (B through F). Benecke Brief at p. 4-5. The listed rejections for Grounds B and C made no reference to the Sitaram Declaration. Furthermore, Benecke explicitly stated that "Grounds D through F rely upon the Sitaram Declaration." Benecke Brief at p. 12. Benecke never asserted or suggested that obviousness Grounds B and C were based on the Sitaram Declaration. However, the record is uncontroverted that the Petition Decision granting reexamination did in fact rely on the discredited Sitaram

Declaration in each of the purported substantial new questions of patentability, which renders the Petition Decision contrary to USPTO policy.

## IV. THE APPEALED CLAIMS WOULD NOT HAVE BEEN OBVIOUS

### A. Haartz's Claim That This Appeal is Directed Only to Claim 1 is Incorrect

Haartz asserted that

> [b]ecause Benecke only directs its arguments to representative claim 1 in this appeal, this appeal is directed just to representative claim 1.

Haartz Brief at p. 2. Haartz's assertion is incorrect because (1) Benecke's arguments attack specific combinations of references; and (2) the Board rejected the claims based on these particular combinations. All of the rejections from the Action Closing Prosecution mailed December 9, 2011 are listed on P. 4-5 of Benecke's Brief. The Board maintained the rejections raised in Grounds B through F. A29 at first full paragraph. Claims 13 and 17 only stand rejected in Grounds B and E. Each of these Grounds relies on a combination of references that includes both McKay and Kopytko. If this Court finds Benecke's argument that McKay teaches away from combination with Kopytko to be persuasive, then the Board's rejection of claims 13 and 17 must be reversed.

### B. Haartz's Claim Regarding Benecke's Statement During an Oral Hearing Before the Board is Incorrect

Haartz asserted that

> at oral argument Benecke indicated that with respect to all obviousness rejections the "primary problem was [in

5

> Benecke's view] that Kopytko and McKay were not properly combinable.

Haartz Brief at p. 20. However, Benecke's statement during the oral hearing was in response to a question specifically about a single Ground of rejection. In particular, Judge Lebovitz referred to "Rejection B" and inquired "[w]hat's wrong with that rejection in your mind?" A526. Furthermore, reference to a "primary problem" does not suggest that Benecke did not have other objections to the USPTO's position.

### C. Haartz's Statements Concerning the Board's Findings of Fact are Misleading

Haartz referred to three alleged findings of fact concerning the gel content limitation. Haartz Brief at p. 23. Haartz mischaracterizes of each of these findings of fact. Regarding point (1), Haartz claimed that the Board found that

> Kopytko included an explicit teaching of polyolefin (polyethylene or polypropylene) based films with improved grain stability and embossing strength having gel contents of 30% …

However, as the record evidences, Kopytko's 30% degree of crosslinking refers to a single component instead of an entire foil. A33. In its Decision on Rehearing, the Board was receptive to this argument but did not explicitly indicate it was persuasive. *Id.* The record is unclear whether the Board maintained its previous finding of fact regarding Kopytko. Furthermore, the single component referred to in connection with the 30% degree of crosslinking is not a generic polyolefin or polyethylene or polypropylene as asserted by Haartz. Instead, the 30% degree of

6

crosslinking refers specifically to an "ethylene-propylene-diene terpolymer" (i.e., EPDM). A190 at col. 2, lines 1-3.

>Regarding point (2), Haartz claimed that the Board found that

>>McKay included an explicit teaching on how to achieve gel contents of 20% to 30% in polyolefins (polyethylene or polypropylene) to improve strength and factors in selecting radiation dose to achieve such values …

However, McKay's teachings do not refer to a generic polyolefin or polyethylene or polypropylene. Instead, McKay focuses on irradiating specific types of polymers that necessarily includes vinylidene aromatic monomer units. A87.

>Regarding point (3), Haartz claimed that the Board found that

>>Deanin which showed that gel content depends upon crosslinking (A18) and increases modulus (mechanical strength) …

However, the purported modulus increase was not referred to in the Board's findings of fact and appears to be invented by Haartz in order to create a motivation to achieve a certain gel content that was never contemplated by the Board.

>D. **<u>Neither Haartz nor the Board has Provided a Coherent Rationale for Applying the Alleged Gel Content Teachings of Kopytko and/or McKay to the Process of Scholz</u>**

Haartz spends a considerable portion of its brief arguing that McKay is analogous art. Haartz Brief at p. 25-27. However, after providing arguments in favor of its position that McKay is analogous art, Haartz merely concluded that

7

> [s]ubstantial evidence therefore supports the PTAB finding that McKay was analogous art and properly combined with the other references of record.

Haartz Brief at p. 27.  Haartz provided no rationale explaining why a person having ordinary skill in the art would have combined McKay with Scholz and Kopytko. Haartz's assertions that the references are in similar fields and conclusory statements regarding combinability mirror the Board's positions.  *See, e.g.,* A12 at first paragraph and A33 at second paragraph.

Whether prior art references constitute analogous art is merely a threshold test.  Satisfaction of the analogous art test is necessary but not sufficient to support a finding of obviousness.  Instead, determining whether a prior art reference is analogous and determining whether analogous prior art references would have been properly combinable require distinct analyses.  *See, e.g., Innovention Toys, LLC v. MGA Entertainment, Inc.,* 637 F.3d 1314, 1323 (Fed. Cir. 2011).  In *Innovention Toys*, this Court reversed a district court's grant of summary judgment of nonobviousness.  The district court's summary judgment was based on an erroneous finding that the prior art was non-analogous.  This Court reversed the district court's non-analogous art finding but remanded the case back to the district court to make additional determinations including "whether one of ordinary skill in the art would have been motivated to combine the teachings [of the prior art references] …".  *See also Wyers v. Master Lock Co.,* 616 F.3d 1231, 1237-1238 (Fed. Cir. 2010) (treating whether prior art is analogous and whether there was a motivation to combine the references as separate questions).

8

Assuming *arguendo* that McKay constitutes analogous art, the Board and Haartz have still failed to provide a rationale explaining why a person having ordinary skill in the art would have been motivated to modify Scholz's process to achieve McKay's gel content.  As Benecke previously argued, "rejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *KSR Int'l Co. v. Teleflex, Inc.,* 550 U.S. 398, 418 (2007) (quoting *In re Kahn,* 441 F.3d 977, 988 (Fed. Cir. 2006)).  "[S]ome kind of motivation must be shown from some source, so that the jury can understand why a person of ordinary skill would have thought of either combining two or more references or modifying one to achieve the patented method." *Innogenetics, N.V. v. Abbott Labs.,* 512 F.3d 1363, 1374 (Fed. Cir. 2008).  *See also McGinley v. Franklin Sports, Inc.,* 262 F.3d 1339, 1351-1352 (Fed. Cir. 2001) ("the factual inquiry whether to combine references must be thorough and searching.").  Haartz focused on whether McKay is analogous art instead of addressing Benecke's previous arguments concerning the lack of a rationale to combine, the same failing which occurred at the USPTO when the Board did not provide any rationale explaining why an ordinarily skilled artisan would have been motivated to apply McKay's gel content or Kopytko's degree of crosslinking to Scholz's process.

> **E.     McKay Teaches Away from the Use of EPM and EPDM**

Benecke previously argued that McKay teaches away from the use of EPM and EPDM materials. Benecke Brief at p. 19-21. In response, Haartz asserted that McKay's materials could be selected from (1) an α-olefin (ethylene or propylene); (2) dienes; and (3) one vinylidene aromatic compound. Haartz Brief at p. 26. Haartz further asserted that the materials of McKay overlapped with the materials of Kopytko because Kopytko discloses a "homo- and/or copolymer of ethylene and/or propylene". *Id*.

However, Haartz has mischaracterized the materials disclosed in McKay and Kopytko. McKay's interpolymer does not consist exclusively of only one of elements (1)-(3). Instead, McKay's patented interpolymer necessarily includes the α-olefin and the vinylidene aromatic compound; and optionally includes the diene. A87. Regarding Kopytko, the ethylene and/or propylene homo- and/or copolymer referred to by Haartz is not disclosed as an alternative to EPDM. Instead, the component Haartz referred to (i.e., the homo- and/or copolymer of ethylene and/or propylene) is included in addition to EPDM. A189. Kopytko requires EPDM. In contrast, McKay teaches away from the use of EPDM and, therefore, cannot be properly combined with Kopytko.

Benecke previously cited *Winner* for the proposition that when a given course of action results in simultaneous advantages and disadvantages, the underlying trade-off of benefits both lost and gained should, on balance, be desirable. *Winner Int'l Royalty Corp. v. Wang,* 202 F.3d 1340, 1349 (Fed. Cir.

10

2000). Benecke also previously cited *Medichem* for the proposition that "each reference must be considered 'for its power to suggest solutions to an artisan of ordinary skill … considering the degree to which one reference might accurately discredit another.'" *Medichem S.A. v. Robalo S.L.,* 437 F.3d 1157, 1165 (Fed. Cir. 2006) (quoting *In re Young,* 927F.2d 588, 591 (Fed. Cir. 1991)).

In response, Haartz attempted to distinguish *Winner* and *Medichem* from the present appeal on the basis on the specific facts of *Winner* and the type of USPTO proceeding (an interference) the appeal in *Medichem* related to. Haartz Brief at p.28-29. Benecke submits that these differences do not invalidate Benecke's arguments. McKay teaches that "[t]he inventive materials have a superior balance of properties, as compared to EPM and EPDM based materials". A87. McKay further teaches that EPM and EPDM are disadvantageous due to low green strength, higher susceptibility to oil attack, and resistance to surface modification. A88 at col. 2, lines 8-15. McKay criticizes, discredits, and would otherwise discourage investigation into the use of EPM and EPDM based materials. Accordingly, McKay teaches away from the use of EPDM and a person having ordinary skill in the art would not have combined McKay with Kopytko which requires EPDM.

    F.    <u>**The Evidence of Secondary Considerations was Not Properly Considered**</u>

Benecke previously argued that the Board failed to adequately consider evidence of commercial success. Benecke Brief at p. 22-24. In particular, Benecke

11

argued that the Bedke and Bühring Declarations referred to foils produced according to the method of claim 1 and that the First Hülsewede Declaration provided evidence that the commercial success evidenced by the Bedke and Bühring Declarations resulted from the amount of gel content.

In response, Haartz argued that the evidence of commercial success was unpersuasive because the results may have been caused by a lacquering step that was not claimed in the '738 patent. Haartz Brief at p. 30-31. Haartz further argued that the First Hülsewede Declaration "was only offered and argued below to show that the gel content limitation was not necessarily in Scholz." Haartz Brief at p. 31. Haartz also asserted that Benecke's arguments were waived because they were not raised earlier.

However, Benecke argued to the Board that the lacquering step was conventional and could not account for the commercial success of the TEPEO®2 foils. A491 at first paragraph. Additionally, contrary to Haartz's assertion, the First Hülsewede Declaration was not merely offered to the Board to show that the gel content limitation was not inherent to Scholz's method. In particular, the First Hülsewede Declaration was also offered as evidence that "gel contents within the range of 5% to 80% but outside the range of 15% to 65% exhibited inferior results" (e.g., poor graining stability). A493 at second paragraph. Grain stability is precisely the property Benecke previously referred to. Benecke Brief at p. 23. The declaration evidence, when considered in its entirety, establishes a nexus between the claims and commercial success.

12

## V. **CONCLUSION**

For the foregoing reasons and the reasons provided in Benecke's principal brief, the Board's obviousness determination should be reversed, and Claims 1-6 and 8-17 should be found valid. The Board's obviousness rejections should be reversed in favor of Benecke.


March 2, 2015                                    Respectfully submitted,
                                                 FAY SHARPE LLP


                                                 By /s/ Mark D. Klinko
                                                     Mark D. Klinko
                                                     Jude A. Fry
                                                     1228 Euclid Avenue
                                                     Fifth Floor
                                                     Cleveland, Ohio 44115
                                                     (216) 363-9125
                                                     mklinko@faysharpe.com

                                                 Attorneys for Benecke-Kaliko AG

## **CERTIFICATE OF COMPLIANCE WITH FED.R. APP. P. 32(a)(7)(B)**

Counsel for Appellant Certifies that the body of this brief, beginning with the "Introduction" on page 1 and ending with the last line of the "Conclusion" on page 13, contains 2926 words as computed by Word® 2010, in compliance with Rule 32(a)(7)(B)(ii) of the Federal Rules of Appellate Procedure.

| | |
|---|---|
| March 2, 2015 | /s/ Mark D. Klinko |
| Date | Mark D. Klinko |

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 2nd day of March, 2015, I caused this BRIEF FOR APPELLANT BENECKE-KALIKO AG to be filed electronically with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Dr. Steven J. Grossman
Grossman, Tucker, Perreault, & Pfleger PLLC
55 South Commercial Street
Manchester, NH 03101
sgrossman@gtpp.com

Beth A. Filip
Grossman, Tucker, Perreault, & Pfleger PLLC
55 South Commercial Street
Manchester, NH 03101
bfilip@gtpp.com


Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the BRIEF FOR APPELLANT BENECKE-KALIKO AG will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

　　　　　　　　　　　　　　　　　　　　/s/ Mark D. Klinko
　　　　　　　　　　　　　　　　　　　　Mark D. Klinko

CONT 700004US02 837065 1